### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

IN RE:
**Fred Heard fdba Heard Trucking, LLC**          **CASE NO. 18-11276-reg**
**Lila L. Heard**

                                                 **CHAPTER 7**

**Debtors**

### MOTION FOR ORDER AUTHORIZING
### ABANDONMENT AND MODIFYING AUTOMATIC STAY

Comes now Ocwen Loan Servicing, LLC, ("Creditor"), by and through its attorney, Codilis Law, LLC, and in
support of its Motion for Order Authorizing Abandonment and Modifying Automatic Stay, states as follows:

1. The Creditor is the holder of a mortgage on the property located at 6722 Lakeview Court, Fort
   Wayne, IN 46815-7922.

2. The Creditor holds a security interest in said property by way of written instruments, which were perfected
   as provided by law.  True and exact copies of said instruments, with proof of perfection, are attached hereto
   and made a part hereof.

3. Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in
   this Motion for Relief for Ocwen Loan Servicing, LLC (the noteholder) and is entitled to proceed
   accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is
   dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said
   foreclosure action will be conducted in the name of Ocwen Loan Servicing, LLC (the noteholder). Ocwen
   Loan Servicing, LLC (the noteholder) has the right to foreclose because: Noteholder is the original
   mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly
   or through an agent has possession of the promissory note and the promissory note is either made payable to
   Noteholder or has been duly endorsed.

4. As of October 3, 2018 the payoff amount is $122,319.90 and the interest rate is 4.75000% per annum.

5. Schedule D lists other secured creditors with claims totaling $7,523.00 against the real estate.

6. The real estate is valued at $125,000.00 on the bankruptcy schedules.

7. The debtors claim an exemption of $9,477.00 with respect to the subject property.

8. There is no equity in the real estate and it is not needed for an effective reorganization. The automatic stay should be modified pursuant to 11 U.S.C. §362(d)(2).

9. Said property is of inconsequential value and benefit to the estate and should be abandoned from the bankruptcy estate pursuant to 11 U.S.C. §554(b).

**WHEREFORE,** this Creditor requests that:

1. The Automatic Stay of this proceeding be terminated as to this Creditor, its agents, successors and assigns.

2. The subject property be abandoned from the bankruptcy estate.

3. That the Court waive the fourteen day stay of the Order granting this motion, pursuant to Bankruptcy Rule 4001(a)(3); and

4. For any and all other just and proper relief that the Court sees fit.

Attorneys for Creditor

By: _____

Michael J. Kulak    21347-53
Codilis Law, LLC
Atty File: 1030305

**This firm is deemed to be a debt collector.**

## CERTIFICATE OF SERVICE

I certify that on October 9, 2018, a copy of the attached was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Frederick W. Wehrwein; wehrweinPC@aol.com
Martin E. Seifert; mseiferttrustee@hallercolvin.com
United States Trustee, N.D., IN; ustpregion10.so.ecf@usdoj.gov


I further certify that on October 9, 2018, a copy of the attached was mailed by depositing in the U.S. Mail to the following:

Fred Heard
Lila L. Heard
6722 Lakeview Ct.
Fort Wayne, IN  46815


Attorneys for Creditor

By: _____
Michael J. Kulak    21347-53

Codilis Law, LLC
8050 Cleveland Place
Merrillville, IN 46410
(219) 736-5579
bankruptcy@codilis.com
Atty File: 1030305



*20090467758*
## 2009046775
RECORDED ON
09/08/2009  02:36:08PM
JOHN MCGAULEY
ALLEN COUNTY RECORDER
FORT WAYNE, IN

REC FEE:  28.00
TRANS # 70350

After Recording Return To:
RUOFF MORTGAGE COMPANY INCORPORATED
1110 E DUPONT RD
FORT WAYNE, INDIANA 46825
Loan Number: ███████

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

FHA CASE NO.
███████

**MIN:** ███████

THIS MORTGAGE ("Security Instrument") is given on  AUGUST 24, 2009
The mortgagor is  FREDRICK HEARD AND LILA L HEARD HUSBAND AND WIFE

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, tel. (888) 679-MERS.

RUOFF MORTGAGE COMPANY INCORPORATED, AN INDIANA CORPORATION          ("Lender")
is organized and existing under the laws of  INDIANA
and has an address of   1110 E DUPONT RD, FORT WAYNE, INDIANA 46825

Borrower owes Lender the principal sum of   ONE HUNDRED THIRTY-SEVEN THOUSAND EIGHTY-SIX AND 00/100          Dollars (U.S. $ 137,086.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  SEPTEMBER 1, 2039 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA  11/01/08                    Page 1 of 8                    DocMagic *eForms* 800-649-1362
                                                                       www.docmagic.com

Meridian Title

28

of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in ALLEN                                County, Indiana:

LOT NUMBER 242 IN LAKE FOREST, SECTION V, AS RECORDED IN PLAT RECORD 29, PAGES 41-42.
A.P.N.: 02-13-03-126-007.000-070

which has the address of                            6722 LAKEVIEW COURT
                                                            [Street]

      FORT WAYNE                      , Indiana      46815      ("Property Address"):
          [City]                                              [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      **UNIFORM COVENANTS.**  Borrower and Lender covenant and agree as follows:
      **1.    Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
      **2.    Monthly Payment of Taxes, Insurance, and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
      Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA  11/01/08                    Page 2 of 8                    *DocMagic eForms* 800-649-1362
                                                                    *www.docmagic.com*

or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA  11/01/08                    Page 3 of 8                    DocMagic eForms 800-649-1362
www.docmagic.com

concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.  Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.  Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.  Grounds for Acceleration of Debt.**

    **(a)  Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)    Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)    Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS                                       from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.    Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.    Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.    Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.    Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.    Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA  11/01/08                              Page 5 of 8                          *DocMagic eFormus* 800-649-1362
www.docmagic.com

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

DocMagic *eForms* 800-649-1362
www.docmagic.com

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider
☐ Planned Unit Development Rider ☐ Adjustable Rate Rider ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider ☐ Other [Specify]

**YOU ARE NOT OBLIGATED TO PAY ANY MONEY UNLESS YOU SIGN THIS CONTRACT AND RETURN IT TO THE SELLER/LENDER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
FREDRICK HEARD                -Borrower

_____ (Seal)
LILA L HEARD                -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:                        Witness:

_____        _____

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA 11/01/08        Page 7 of 8        DocMagic eForms 800-649-1362
www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of Indiana

County of _____ *Allen* _____ SS:

Before me, _____ *Emily Rennecker* _____

this _24_ day of _*Aug*_ _2009_ , FREDRICK HEARD AND LILA L

HEARD _____

_____

acknowledged the execution of the annexed mortgage.

*Emily Rennecku*

Notary Signature

Official Seal
Emily A. Rennecker
Allen County
Commission Expires July 16, 2014

_____
Printed/Typed Name                    Notary Public

My commission expires: _____

(Seal)                              County of residence: _____

This instrument was prepared by: *Emily Rennecker*

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.

Meridian Title Corporation
1230 Ruston Pass, Suite C
Fort Wayne, IN 46825

*Emily Rennecker*

Signature of Preparer

FHA INDIANA MORTGAGE - MERS
INMTGZ.FHA 11/01/08                    Page 8 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

Inmtgz.fha.xml

Heard

```
* 2 0 1 0 0 3 3 1 2 3   2 *
```

## 2010033123
RECORDED ON
07/19/2010   12:23:24PM
JOHN MCGAULEY
ALLEN COUNTY RECORDER
FORT WAYNE, IN

REC FEE: 14.00
TRANS # 98758

WWR #

### ASSIGNMENT OF MORTGAGE

For valuable consideration received, Mortgage Electronic Registration Systems, Inc., as nominee for Ruoff Mortgage Company Incorporated, an Indiana Corporation, hereby sells, assigns, transfers to GMAC Mortgage, LLC, whose address is c/o GMAC Mortgage Corporation, 500 Enterprise Rd., Ste 150, Horsham, PA 19044, its successors and assigns, all of its right, title and interest in and to that certain Mortgage Deed executed by Fredrick Heard, and Lila L. Heard, as Mortgagors, to Mortgage Electronic Registration Systems, Inc., as nominee for Ruoff Mortgage Company Incorporated, an Indiana Corporation, dated August 24, 2009, and recorded in the Office of the Recorder of Allen County, State of Indiana, on September 8, 2009, as Instrument No. 2009046775, together with the indebtedness secured by the Mortgage.

SEE LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A"

Dated this 25th day of June, 2010.

By: _Donald T Dempsey_   R.J. 6-25-10

Printed: **Donald T. Dempsey**

Title: **Assistant Secretary**
Mortgage Electronic Registration Systems, Inc. as Nom for Ruoff Mortgage Co.

State of _Pennsylvania_ )
                                        ) ss.
County of _Montgomery_ )

On this 25 day of _June_, 2010, before me, a Notary Public, personally appeared _Donald T. Dempsey_, who being duly sworn, affixed that person's signature.

_J. J. Castagna_
Notary Public

Printed: _John J. Castagna_

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
John J. Castagna, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Feb. 25, 2014
Member, Pennsylvania Association of Notaries

This instrument prepared by: Zarksis V. Daroga, Attorney at Law
I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law.

CERTIFICATION   Assignment
This is a true and certified copy of a _of Mortgage_
As the same appears on record in my office as
Document # _# 2010033123_
Witness: My hand and seal this date: _10/22/2013_
_John D. McGauley_
Allen County Recorder

L-Westman, Weinberg + Reis
525 Vine St, Ste 800
Cincinnati, OH 45202

Allen County Recorder Document #: 2010033123

H

**EXHIBIT A.**

LOT NUMBER 242 IN LAKE FOREST, SECTION V, AS RECORDED IN PLAT RECORD 29, PAGES 41-42.

Commonly known as: 6722 Lakeview Court, Fort Wayne, Indiana 46815

**2013047436**
**RECORDED: 08/15/2013 08:24:15 AM**
**JOHN MCGAULEY**
**ALLEN COUNTY RECORDER**
**FORT WAYNE, IN**

When Recorded Return To
Indecomm Global Services
2925 Country Drive
St Paul, MN 55117

██████████

## Assignment of Mortgage

Dated August 12, 2013

For value received GMAC Mortgage, LLC, In c/o Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034, the undersigned hereby grants, assigns and transfers to Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034, all beneficial interest under a certain Mortgage dated August 24, 2009 executed by FREDRICK HEARD AND LILA L HEARD and recorded in Book XX on Page(s) XX as Document Number 2009046775 on September 8, 2009 of the official records of the County Recorder of Allen County, Indiana

GMAC Mortgage, LLC

By  _____

Lisa Marie Spurbeck,
Assistant Vice President

STATE OF Minnesota            )

COUNTY   Ramsey              ) SS

██████████████

On August 12, 2013 before me, Sandra Jean Kinnunen , Notary Public in and for said State personally appeared Lisa Marie Spurbeck , Assistant Vice President of GMAC Mortgage, LLC, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument  WITNESS my hand and official seal

This instrument was prepared by
Dave Huston
Indecomm Global Services
2925 Country Drive
St Paul, MN 55117



Sandra Jean Kinnunen, Notary Public
My Commission expires  January 31, 2016

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

Allen County Recorder  Document #  ██████████

MIN: ███████████

Loan Number: ███████████

# NOTE

FHA Case No.
██████████████

AUGUST 24, 2009            FORT WAYNE                    INDIANA
[Date]                          [City]                          [State]

6722 LAKEVIEW COURT, FORT WAYNE, INDIANA 46815
[Property Address]

## 1.  PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means   RUOFF MORTGAGE COMPANY INCORPORATED, AN INDIANA
CORPORATION                                and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED THIRTY-SEVEN THOUSAND EIGHTY-SIX AND 00/100
                                    Dollars (U.S. $ 137,086.00         ),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of   FIVE AND 500/1000                          percent
(     5.500   %) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the   1st  day of each month beginning
on   OCTOBER 1, 2009                . Any principal and interest remaining on the   1st    day of
SEPTEMBER, 2039            , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at   1110 E DUPONT RD, FORT WAYNE, INDIANA 46825

, or at such other place
as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 778.36                 .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 05/01/08                    Page 1 of 3              DocMagic *CRforms* 800-649-1362
                                                              www.docmagic.com

Usfha.nte.xml

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

**5.   BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.   BORROWER'S FAILURE TO PAY**

   **(A) Late Charge for Overdue Payments**

   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   FOUR AND 000/1000                          percent (     4.000 %) of the overdue amount of each payment.

   **(B) Default**

   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   **(C) Payment of Costs and Expenses**

   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                          Page 2 of 3                          *DocMagic eForms* 800-649-1362
www.docmagic.com

Usfha.nte.xml

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
FREDRICK HEARD                -Borrower

_____ (Seal)
LILA L HEARD                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

Pay to the order of

Without recourse
Ocwen Loan Servicing, LLC

CHAR JULION , Authorized Signers

PAY TO THE ORDER OF: **Ally Bank f/k/a GMAC Bank**
WITHOUT RECOURSE

RUOFF MORTGAGE COMPANY INCORPORATED, AN INDIANA CORPORATION

BY: _____
    DAVID L. RUOFF

ITS: PRESIDENT - RUOFF MORTGAGE COMPANY

Pay to the order of
GMAC Mortgage, LLC
without Recourse:

D. Chiodo, Assistant Secretary
Ally Bank f/k/a GMAC Bank

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                Page 3 of 3                DocMagic eForms 800-649-1362
                                                             www.docmagic.com

PAY TO THE ORDER OF
Ocwen Loan Servicing, LLC

WITHOUT RECOURSE

J. GRAY
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION

Identifier: ▮

Doc Type:LMOD

Investor Loan # ▮
Custodian ID: ▮
This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Loss Mitigation
3700 J Street SW
Suite 555
Cedar Rapids, IA 52404

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): FREDRICK HEARD  LILA L HEARD
Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): August 24, 2009 *original upBuso 137, 086.00*
Loan Number: ▮
Property Address ("Property"): 6722 LAKEVIEW COURT FORT WAYNE IN 46815

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on September 08, 2009 with Instrument Number 2009046775 in Book  and/or Page number  of the real property records of ALLEN County, IN. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 6722 LAKEVIEW COURT FORT WAYNE IN 46815, which real property is more particularly described as follows. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

### (Legal Description – Attached as Exhibit if Recording Agreement)

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

- 4 -

1.  **My Representations.**  I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

    G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H.  If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents.  Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A.  TIME IS OF THE ESSENCE under this Agreement;

    B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on January 01, 2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  The Loan Documents will be modified and the first modified payment will be due on January 01, 2014.

    A.  The new Maturity Date will be: December 01, 2043.

    B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan.  The new Principal balance of my Note will be $127,956.20

- 5 -

(the "New Principal Balance").

C. Interest at the rate of 4.750% will begin to accrue on the New Principal Balance as of December 01, 2013 and the first new monthly payment on the New Principal Balance will be due on January 01, 2014. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends On |
|---|---|---|---|---|---|---|
| 4.750% | December 01, 2013 | $667.48 | $273.14, may adjust periodically | $940.62, may adjust periodically | January 01, 2014 | December 01, 2043 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step interest rate or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower or co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents; or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants,

agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. **Funds for Escrow Items.** I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in

escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer or assumption of the Loan, including this Agreement to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J.  That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will

be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

1-4-14 _____ *Fredrick Heard* _____
Date         FREDRICK HEARD

1-4-14 _____ *Lila L Heard* _____
Date         LILA L HEARD

_____ _____
Date

_____ _____
Date

## BORROWER ACKNOWLEDGMENT

State of ____IN____
County of ___Allen___

On this 4 day of January, 2014, before me, the undersigned, a Notary Public in and for said county and state, personally appeared FREDRICK HEARD LILA L HEARD, personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

*Carol A Quirk* _____
Notary Public Carol A. Quirk
My Commission Expires: Feb 27, 2021

CAROL A QUIRK
Notary Public - Seal
State of Indiana
My Commission Expires Feb 27, 2021

- 10 -

Ocwen Loan Servicing, LLC

By: _Kirk Neuroth_ Kirk Neuroth

Title: ___Authorized Officer___

Date: _1-14-14_

**LENDER ACKNOWLEDGMENT**

State of IOWA
County of _Black Hawk_

On this 14 day of _January, 2014_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ___Kirk Neuroth___, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _Authorized Officer_ of Ocwen Loan Servicing, LLC, said instrument is the act and deed of said entity, and that they, being authorized to so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_Nichole Schlarmann_
Notary Public Nichole Schlarmann
My Commission Expires: _3-23-15_

```
┌─────────────────────────────────────┐
│  NOTARIAL  │ NICHOLE SCHLARMANN      │
│   SEAL     │ COMMISSION NO. 757537   │
│            │ MY COMMISSION EXPIRES   │
│   IOWA     │ March 23, 2015          │
└─────────────────────────────────────┘
```

- 11 -

# INDIANA AFFIRMATION STATEMENT

"I affirm, under penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law."

_Sarah McEchen_ __Signature__

_Sarah McEchen_ __Printed Name__

Certificate of Preparation

This is to certify that this instrument was prepared by Ocwen Loan Servicing, LLC, one of the parties named in the instrument.

_____
Signature

SARAH MCCAHEN
LOSS MITIGATION

Ocwen Loan Servicing LLC
Loss Mitigation Department
3451 Hammond Ave
Waterloo, IA 50702
1-800-850-4622

LOT NUMBER 242 IN LAKE FOREST, SECTION V, AS RECORDED IN PLAT RECORD 29, PAGES 41-42.
A.P.N.: 02-13-03-126-007.000-070

